## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## AT KNOXVILLE

BOBBY MURRAY, BILLY D.         )
MURRAY and LORETTA MURRAY,   )
                                  )
    Plaintiffs,                 )
                                  )
v.                              )    No. 3:04-CV-501
                                )    (Phillips/Guyton)
HARRIMAN CITY POLICE CHIEF    )
JACK STOCKTON, OFFICER        )
AMANDA GODIN, OFFICER         )
KENNETH MYNATT, OFFICER      )
JASON MYNATT, AND CITY OF    )
HARRIMAN,                     )
                                  )
    Defendants.              )

## MEMORANDUM AND ORDER

      The plaintiffs initiated the instant lawsuit against the City of Harriman and its officers

for various civil rights claims related to arrests that occurred on November 2, 2003.  The

individual defendants have filed a motion for summary judgment [Doc. 47] claiming that the

plaintiffs have failed to sustain any allegations against them in the complaint to which the

plaintiffs would be entitled to relief.  The plaintiffs have responded, and the defendants have

replied.  Additionally, the Court has considered a subsequent sur-reply instanter filed by

plaintiffs.  For the reasons that follow, defendants' motion for summary judgment  [Doc. 47]

is **GRANTED in part and DENIED in part**.[1]

---

[1]As defendant City of Harriman has not moved for summary judgement, it remains a defendant in this action.

## I.    <u>Summary of the Facts</u>

As the law requires, all disputed facts and inferences are resolved most favorably for the plaintiffs.  The Court merely provides an abridged summary of facts for the purposes of this opinion.

The plaintiffs' alleged claims arise from a dangerous and reckless incident initiated by plaintiff Billy Murray.  On November 2, 2003, Officer Amanda Godin stopped Billy Murray within the city limits of Harriman for a registration violation.  Apparently, at that time, Billy Murray had been charged with domestic assault, three counts of child abuse, and vandalism.  Additionally, a warrant for his arrest was issued for violating a restraining order.  After discovering the outstanding warrant for Billy Murray's arrest, Officer Godin advised Mr. Murray of the warrant and asked Mr. Murray to hand over his keys.  Officer Godin also ordered Mr. Murray to exit his vehicle; however, Mr. Murray refused.  Officer Godin then attempted to open the driver's door, but the door was locked.  Next, Officer Godin reached into Mr. Murray's vehicle in an attempt to remove the keys from the ignition.  While Officer Godin was reaching into the vehicle, Mr. Murray placed his vehicle in drive and "sped off," pulling Officer Godin forward with Mr. Murray's vehicle.  Officer Godin then returned to her squad car to pursue Mr. Murray.

As captured in the video camera footage from Officer Godin's patrol car, Mr. Murray began a dangerous high-speed car chase through the streets of Harriman.  During the chase, Mr. Murray forced a number of vehicles off the road.  On a number of occasions,

Mr. Murray crossed the double yellow lines while passing cars in the lane for oncoming traffic.  Mr. Murray also drove through a stop sign, and passed several cars while driving on the left shoulder.  Mr. Murray clearly subjected Officer Godin and others to danger and physical harm.  During the chase, Officer Godin requested reinforcements, activated her squad car's siren, and continued to report the activity of the chase.  After a relatively lengthy and extensive pursuit, Mr. Murray pulled over into a gravel lot at Cumberland Utility, ending the pursuit.  Officer Godin quickly exited her vehicle ordering Mr. Murray to lie on the ground, face down.  Almost immediately thereafter, reinforcements, including Officer Kenneth Mynatt and Jason Mynatt,[2] arrived at the scene.  While the angle of the video camera does not allow full view, Jason Mynatt quickly cuffed Mr. Murray on the ground, pulled Mr. Murray up against Mr. Murray's vehicle, searched Mr. Murray for weapons, and then quickly walked Mr. Murray to Officer Godin's squad car to open the door and place him inside the vehicle.

Plaintiffs submit that directly before Mr. Murray was placed in the squad car,  which would have been outside the purview of the squad car's video camera, Mr. Murray was subjected to blows amounting to excessive force.[3]  However, no sounds of distress from

---

[2]At the time of the incident, Jason Mynatt was on the payroll of the Harriman Housing Authority. Later, he was hired as an officer for the City of Harriman.  In their submissions, plaintiffs assert that Jason Mynatt was improperly assisting in the arrests of the plaintiffs.  Moreover, plaintiffs allege that Jason Mynatt had an "inappropriate relationship" with Officer Godin and that his "brutality" was a "show" to impress her.  Plaintiffs also state that the father-son relationship between the Mynatts was improper and contributed to brutality toward the Murrays.

[3]While plaintiffs assert that Officer Kenneth Mynatt was involved in the beating of Billy Murray, the defendants assert that Officer Kenneth Mynatt did not arrive on the scene until Billy Murray had been placed in the back of Officer Godin's patrol car.  Further, the plaintiffs state that they witnessed the surrender and alleged beating of Billy Murray; however, defendants assert that Bobby and Loretta Murray did not arrive on the scene until Billy Murray was placed in the back of Officer Godin's squad car.

Mr. Murray were audible. Furthermore, no sounds of irregular breathing or distress were audible and/or recorded by the squad vehicle's in-car video system. Nevertheless, plaintiffs asserts that Mr. Murray was emotionally injured[4] by the incident, that he received blows to his head and back, and that his shoulder was dislocated.

Within moments of Mr. Murray's surrender, relatives of Mr. Murray appeared at the scene. As seen by the video camera footage from another squad car, a pick-up truck arrived and parked within close proximity of the officers, Mr. Murray's vehicle, and the squad cars. Two individuals can be seen to quickly exit the vehicle to purportedly address the officers.[5] Plaintiffs Loretta and Bobby Murray, the parents of Billy Murray, then asked Officer Kenneth Mynatt if they could drive the vehicle of Billy Murray to their home. Officer Kenneth Mynatt denied this request, stating that Billy Murray's vehicle was to be impounded.[6]

After a verbal refusal to allow the plaintiffs to drive the vehicle away from the scene, Lorretta and Bobby Murray requested that an acquaintance of theirs, Bill Golston, be allowed to tow the vehicle. Officer Mynatt again denied their request, stating that a tow truck service had already been called. At that point, plaintiffs became insistent with respect to the towing. Accordingly, the Murrays were ordered to leave. Loretta Murray claims that

---

[4]Plaintiffs assert that Billy Murray suffers from "paranoid schizophrenia" and that his mental condition was worsened as a result of the incident. Plaintiffs have not submitted supporting medical documentation of the exacerbation.

[5]It is alleged that the parents and brother of Billy Murray arrived at the scene.

[6]The brief search of Billy Murray's vehicle on the roadside produced a crack pipe.

she was shoved toward her vehicle.  In the video footage, Loretta Murray can be seen walking toward her vehicle with an officer walking several feet behind her without touching her.[7]  Further, the video footage depicts Mrs. Murray reluctantly getting into the pick-up truck, waiting a few moments,[8] being ordered to leave again, and then driving away from the scene.

Bobby Murray refused to leave as ordered and continued to assert that Bill Golston must tow the vehicle.  It is apparent from the video footage that the officers are directing the Murrays to leave in their gestures, as well as the responses elicited from the plaintiffs. Eventually, Officer Mynatt advised Bobby Murray that if he did not leave, he would be arrested.  Defendants state that Bobby Murray once again refused the officers' direct order and stated, "Which vehicle do you want me in?"  Accordingly, Bobby Murray was arrested. In viewing the video footage, Bobby Murray was not pushed or struck  when being placed into the police car.  Further, no officers entered into the back of the vehicles with either Billy or Bobby Murray.

However, at some point in time, not in the purview of the video footage, it is alleged that the officers delivered blows to Bobby Murray's "kidneys," which purportedly caused his kidneys to bleed.  The plaintiffs assert that Bobby Murray has prostate cancer, diabetes, as well as high blood pressure, and that the blows delivered worsened Bobby Murray's

---

[7]Around the time that the officers can be seen to follow Loretta Murray to her vehicle in the video footage, Billy Murray comments out loud something to the effect of "we all were hit."

[8]While in her vehicle, Mrs. Murphy appears to have difficulty with her seat belt.

cancer condition. Plaintiffs state that, as a result of the beating, Bobby Murray's high blood pressure was not sufficiently low so that he could undergo a surgery, which would have allegedly prolonged his life in his battle with cancer. However, plaintiffs have not provided any medical documentation to support their contention that the alleged blows to Bobby Murray resulted in an exacerbation of Mr. Murray's prostate cancer or in a change of his cancer treatment. In addition, the plaintiffs state that Jason Mynatt placed his full body weight upon Bobby Murray's neck when placing him in the squad car. Plaintiffs have provided some medical documentation with regard to neck and back pain.

Officer Kenneth Mynatt left first with Bobby Murray.[9] Officer Godin then followed in her squad car with Billy Murray. During the trip to the police station, Billy Murray can be heard speaking on the audio stream in a normal tone, without distress in his voice, irregular breathing, etc. Billy Murray remarks, "I sued them once ... Jack Stockton." Officer Godin asks the Plaintiff, "what are you gonna sue for?" Billy Murray then responds "it's a long story," without comment that he had been struck or improperly arrested. Moreover, Billy Murray does not mention being struck or improperly arrested during the remainder of the trip to the police station. Billy Murray does voice that his father has cancer and takes/needs medication and/or treatment for the aliment, most likely indicating that his father may be in need of medical attention. However, Billy Murray does not himself state that he is in need of medical attention.

---

[9]It is alleged that, during the trip to the police station, Bobby Murray advised Officer Kenneth Mynatt of ill health, including his cancer condition, and that he needed medical treatment.

The search of Billy Murray's vehicle at the police station revealed a 9 mm pistol with a full magazine. Billy Murray was charged with numerous criminal charges including aggravated assault on an officer, resisting stop/frisk/halt, evading arrest, unlawful possession of a firearm, reckless endangerment, and several traffic violations. Bobby Murray was charged with disorderly conduct. However, all of these charges were dropped in court.

The plaintiffs filed this action on November 8, 2004 for various civil rights claims arising out of the arrests. Specifically, the plaintiffs assert the following claims against Officer Godin: "police brutality," failure to protect a prisoner, allowing and assisting in "eccesive" force, failure to comply with Tennessee law, illegal search and seizure of Billy Murray's vehicle, violation of Billy Murray's civil rights, conduct unbecoming an officer, and conspiracy. The plaintiffs assert the following claims against Officer Kenneth Mynatt: "police brutality," false arrest, excessive force, violation of civil rights, interfering with free speech, falsifying an arrest warrant, "brutality on the elderly," failure to provide medical help to a prisoner, "verbal abuse," conduct unbecoming an officer, and conspiracy. The plaintiffs make the following claims against defendant Jason Mynatt: "police brutality," false arrest, excessive force, violation of civil rights, interfering with free speech, falsifying an arrest warrant, conduct unbecoming an officer, and conspiracy. The plaintiffs asserted no claims against defendant Jack Stockton, only naming him in the complaint.

**II. Law Applicable to Rule 56 of the Federal Rules of Civil Procedure**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment will be granted by a court only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The burden is on the moving party to conclusively show that no genuine issue of material fact exists. A court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Morris v. Crete Carrier Corp.,* 105 F.3d 279, 280-81 (6th Cir.1997); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987).

Once the moving party presents evidence sufficient to support a motion under Rule 56 of the Federal Rules of Civil Procedure, the nonmoving party is not entitled to a trial simply on the basis of allegations. The non-moving party is required to come forward with some significant probative evidence, which makes it necessary to resolve the factual dispute at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986). The moving party is entitled to summary judgment if the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof. *Celotex,* 477 U.S. at 323; *Collyer v. Darling,* 98 F.3d 220 (6th Cir.1996).

III.   **Motion for Summary Judgment and Applicable Law**

Defendants state that the plaintiffs have pled causes of action, which are not actionable claims in regard to Officers Godin, Officer Kenneth Mynatt, and Jason Mynatt. Defendants also assert qualified immunity. As to Harriman Police Chief Jack Stockton, defendants submit that plaintiff have not pled any causes of action against him.[10] Further, defendants state that plaintiffs have failed to prove any damages resulting from the defendants' alleged improper conduct and have failed to prove evidence of a conspiracy.

In response, the plaintiffs assert that their claims are valid and that, if they had evidence in possession of the defendant, the defendant's improper actions would be evident. Specifically, the plaintiffs assert that the defendants have not provided all of the video footage, including a videotape from a fourth car driven by Officer Kenneth Mynatt. However, Officer Kenneth Mynatt's vehicle was not equipped with a video camera. In fact, Officer Kenneth Mynatt's vehicle was not equipped with an in-car video unit until November 2, 2003. Further, plaintiffs state that the footage has been altered. Bobby and Loretta Murray assert that they viewed a different version of the video with Jack Stockton shortly after the incident occurred. However, the plaintiffs have failed to provide sufficient evidence in support of these assertions; the defendants have provided sworn affidavits that the video footage provided to the plaintiffs is in fact complete and unaltered; and the Court, itself, has

---

[10]Indeed, the plaintiffs do not assert any specific allegations against Jack Stockton; rather they assert claims against Jack Stockton in their response to the summary judgment motion. Said claims include conspiracy, tampering with evidence, allowing evidence to be removed, failing to control officers, not reporting the abuse of plaintiffs, using political pull to hide evidence, and prohibiting evidence to be delivered to plaintiffs.

previously addressed these contentions in plaintiffs' various motions to compel delivery of video footage.

Before discussion of claims proper for the Court's consideration, the Court must identify and exclude claims that are self-concocted; not legitimate, recognized causes of action; and duplicative. As stated, the following claims are dismissed as improper: police brutality, allowing and assisting in eccesive (sic) force, violation of civil rights, failure to comply with Tennessee law, conduct unbecoming an officer, brutality on the elderly, verbal abuse, interference with free speech, and falsifying an arrest warrant.[11] The remaining claims include excessive force, deliberate indifference ("failure to protect a prisoner" and "failure to provide medical help to a prisoner"), illegal search and seizure, conspiracy, and false arrest. These will be addressed in turn.

A.     Excessive force

The Fourth Amendment of the United States Constitution guarantees all citizens the right "to be secure in their persons" and protects "against unreasonable seizures" of a person. U.S. CONST. amend. IV. A court must apply an "objective reasonableness" standard when determining whether an officer's use of force in effecting an arrest is excessive in violation of the Fourth Amendment. *See Graham v. Connor*, 490 U.S. 386,

---

[11]Plaintiffs' claim of "falsifying an arrest warrant" would give rise to criminal liability, not civil. Any civil liability to these plaintiffs would be addressed in a false arrest claim. As such, the claim of "falsifying an arrest warrant" should also be dismissed.

388 (1989).  The test "is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."  *Id.* at 397 (citations omitted).  When considering reasonableness, the standard is "reasonableness at the moment" of the use of force, not when viewed with 20/20 vision of hindsight, but as "judged from the perspective of a reasonable officer on the scene." *Id.* at 396 (citations omitted).

In determining the reasonableness of an officer's use of force in effecting a seizure, a court weighs the plaintiff's interest in not being subjected to the alleged force at issue against the officers' interest in performing the actions, as gauged by the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the plaintiff is actively resisting arrest or attempting to evade arrest by flight.  *Shreve v. Jessamine County Fiscal Court*, 453 F.3d 681, 687 (6th Cir. 2006) (citations omitted).  Though these factors are important, they are not exhaustive, as the Court must ultimately determine "'whether the totality of the circumstances justifies a particular sort of seizure.'"  *St. John v. Hickey*, 411 F.3d 762, 771 (6th Cir. 2005) (quoting *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)).

Because the above analysis is such a fact-intensive endeavor, summary judgment is not appropriate if the legal question of excessive force and immunity turns on which version of the facts is accepted, because then "the reasonableness of the use of force is the linchpin of the case."  *See Sova v. City of Mt. Pleasant*, 142 F.3d 898, 903 (6th Cir. 1998) (*citing Brandenburg v. Cureton*, 882 F.2d 211, 215-16 (6th Cir. 1989)).  Further, in

determining whether to grant summary judgment, a court may not make determinations of witness credibility. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986); *Shreve*, 453 F.3d at 688.

In the case before the Court, the question of whether a constitutional right was violated, specifically, whether excessive force was used, turns completely on which version of the facts one accepts. If the plaintiffs' account of the encounter is credited, that is, that after the plaintiffs had surrendered, the officers unnecessarily and gratuitously used force against plaintiffs, then the force used against the plaintiffs would be objectively unreasonable. When viewing the facts in the light most favorable to the plaintiffs, the Court concludes that a reasonable jury could find that the officers used excessive force. Accordingly, the claims against Jason Mynatt and Officer Kenneth Mynatt will proceed to trial.[12]

B.    Deliberate indifference

I.    Failure to protect a prisoner

Generally speaking, a police officer who fails to act to prevent the use of excessive force may be held liable when (1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity

---

[12]At the hearing on the defendants' motion for summary judgment, the plaintiffs clarified that they did not assert a claim of excessive force against Officer Godin.

and the means to prevent the harm from occurring. *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997). When viewing the facts most favorably for the plaintiffs, the Court cannot say that a reasonable juror would not find that Officer Godin observed excessive force and did not prevent the harm. Accordingly, this claim against Officer Godin will proceed to trial.

2.      Failure to provide medical help to a prisoner

Under the Due Process Clause of the Fourteenth Amendment, pretrial detainees have at least the same level of constitutional protection as convicted prisoners have under the Eighth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 535-39 (1979); *Daniels v. Woodside*, 396 F.3d 730, 735 (6th Cir. 2005). Thus, courts have consistently evaluated pretrial detainees' claims regarding medical care under the same Eighth Amendment cruel and unusual punishment standard applied to the medical claims of the convicted prisoners. *Id.*; *Roberts v. City of Troy*, 773 F.2d 720, 722-23 (6thCir. 1985). For the sake of simplicity, only the Eighth Amendment is referred to in the following discussion.

The Eighth Amendment prohibits mistreatment only if it is tantamount to "punishment," and thus courts have imposed liability upon prison officials only where they are "so deliberately indifferent to the serious medical needs of prisoners as to unnecessarily and wantonly inflict pain." *Horn v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994). A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo County*, 390

F.3d 890, 897 (6th Cir. 2004) (citing *Gaudreault v. Municipality of Salem*, 923 F.2d 203, 208 (1st Cir. 1990)), *reh'g en banc denied.*

The test of whether such a constitutional violation has occurred has both a subjective and objective component.   "The objective component requires that the deprivation alleged must be 'sufficiently serious.'"  *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  In the instant case, the Court must conclude that a material fact dispute exists as to whether a serious harm resulted from the failure to provide treatment to Bobby Murray with respect to his cancer and diabetes condition.  As to the other, "[t]o satisfy the subjective requirement, [a plaintiff] must show that [a defendant] has 'sufficiently culpable state of mind.'"  *Id.*  Under this subjective indifference standard, an officer may be subject to liability "for denying humane conditions of confinement only if he [or she] knows that the prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."[13]  *Farmer*, 511 U.S. at 847.  Accordingly, a plaintiff must show that the official subjectively perceived a risk of harm and then disregarded it.  *See Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001).

This burden is not light.  "The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also

---

[13]A plaintiff "need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer,* 511 U.S. at 842.

draw the inference." *Farmer, 511 U.S. at 837; Speers v. County of Berrien*, No. 05-2072, 2006 WL 2567533, at *3 (W.D. Mich. Sept. 1, 2006) (citations omitted). Further, case law mandates that an official's failure to alleviate a significant risk that he or she should have perceived but did not, will not be considered an "infliction of punishment." *See Farmer*, 511 U.S. at 838; *Comstock*, 273 F.3d at 703. Deliberate indifference amounts to more than mere negligence. *Farmer*, 511 U.S. at 835. However, whether "a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the ususal ways, including inferences from circumstantial evidence ...." *Id.* at 842.

The Court must decide if a jury could find that any violation of constitutional/civil rights occurred, depending on the defendant's amount of contact and actions/inactions in regard to the plaintiff. In the pleadings, the plaintiffs assert that Bobby Murray advised Officer Kenneth Mynatt of his condition; asked for treatment; was denied treatment; was forced to sit on a cold, hard, concrete floor; and was not given any food. He states that he was faint/weak and that the denial of medical care had long term repercussions with regard to his prostate cancer. As mentioned above, while the Court does not have proof of Bobby Murray's medical condition as it related to an exacerbation of his cancer and diabetic condition, the plaintiffs provided records that Bobby Murray was hospitalized as a result of the defendants' alleged abuse and state that the defendants' actions resulted in the lost chance for a surgery that would have prolonged Bobby Murray's life as it would have increased his chances in his battle with cancer. The Court is frustrated that such evidence regarding an exacerbation in Bobby Murray's cancer and diabetic condition is not before the Court presently; however, the Court will allow the plaintiffs the opportunity to prove their

case at trial. If the plaintiffs fail to support their claim at trial, the defendants will be granted a motion for judgment as a matter of law on this issue.

C.   Illegal search and seizure

It is well settled that search incident to arrest is an exception to the warrant requirement. Further, under the "search incident to arrest" exception to the warrant requirement, "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *United States v. White*, 871 F.2d 41, 43-44 (6th Cir. 1989) (citing *New York v. Belton*, 453 U.S. 454 (1981)). The *Belton* exception to the warrant requirement applies even where the arrestee is out of reach of the car and its contents. *Id.* This includes the search of a glove compartment. *Id.* Although there is a split in the circuits as to whether the police may search a vehicle incident to arrest even after the arrestee was handcuffed and placed in the backseat of a cruiser, the 6th Circuit has not wavered in its adherence to this rule allowing the search. *U.S. v. Patterson*, 993 F.2d 121, 122-23 (6th Cir. 1993). The post-arrest impoundment and subsequent inventory search of a vehicle is within the discretion of police pursuant to their caretaking and safeguarding responsibility of the arrestee's property. *Colorado v. Bertine*, 479 U.S. 367 (1987); *U.S. v. Harvey*, 16 F.3d 109, 112 (6th Cir. 1994).

A warrantless search of the vehicle and the passenger compartment of an occupant's vehicle subsequent to his or her arrest is reasonable and does not constitute

16

an unreasonable search pursuant to the 4th Amendment. In the case at bar, the officers had the right to search Billy Murray's vehicle, and the Court does not believe that the post-arrest impoundment and subsequent inventory search of the vehicle was improper. Therefore, this claim is dismissed.

D.    Conspiracy

If a plaintiff initiates a claim against a private defendant under a conspiracy theory, the plaintiff must show that two or more private defendants agreed to injure another by unlawful action and committed an overt act in furtherance of the conspiracy. *Mich. Paytel Joint Venture v. City of Detroit*, No. 00-1516, 287 F.3d 527, 541 (6th Cir. 2002) (*citing Hooks v. Hooks,* 771 F.2d 935, 943-44 (6th Cir. 1985)). Conspiracy claims must be pled with some degree of specificity. Vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983. *Gutierrez v. Lynch*, 826 F.2d 1534 (6th Cir. 1987) (*citing Jaco v. Bloechle*, 739 F.2d 239, 245 (6th Cir. 1984) (conspiracy claim properly dismissed where "complaint merely alleged broad conclusory negligence language void of the factual allegations necessary to support a conspiracy theory").

As the plaintiffs have failed to make any factual allegations that would particularly evince conspiracy, the plaintiffs' claims for civil conspiracy against defendants are dismissed.

E.    <u>False Arrest</u>

The elements of the tort of false arrest and imprisonment are (1) the detention or restraint of one against his will and (2) the unlawfulness of such detention or restraint.[14] *Coffee v. Peterbilt of Nashville, Inc.,* 795 S.W.2d 656, 659 (Tenn. 1990)*; Barbee v. Wal-Mart Stores, Inc.*, NO. W2003-00017-COA-R3-CV, WL 239763, at \*5 (Tenn.Ct.App. Feb. 9, 2004).

In considering dismissal of a false arrest/false imprisonment claim, the court may rely on a defendant's probable cause to arrest a plaintiff, concluding that the existence of probable cause precludes the claim.  *See Stemler v. City of Florence*, 126 F.3d 856, 871-72 (6th Cir.1997) (finding that the existence of probable cause for arrest forecloses false arrest and malicious prosecution claims); *Mark v. Furay*, 769 F.2d 1266, 1269 (7th Cir.1985) ("[T]he existence of probable cause for an arrest totally precludes any section 1983 claim for unlawful arrest, false imprisonment, or malicious prosecution, regardless of whether the defendants had malicious motives for arresting the plaintiff."); *Hansel v. Bisard*, 30 F.Supp.2d 981, 985-86, 990 (E.D.Mich.1998); *Gumble v. Waterford Township*, 171 Fed.Appx. 502, 507-08 (6th Cir. 2006).

---

[14]The causes of action for false arrest and false imprisonment have been stated to be distinguishable in terminology only, the difference between them lying in the manner they arise. Thus a person may falsely imprison another without an arrest, but a person who is falsely arrested is at the same time falsely imprisoned, and an unlawful arrest may give rise to a cause of action for either false arrest or imprisonment or both.  32 Am.Jur.2d False Imprisonment § 3 (2006).

As the Court finds that the defendants had ample reason or probable cause to arrest the plaintiffs, plaintiffs' false arrest claims brought under 42 U.S.C. § 1983 and Tennessee law are dismissed.[15]

F.    Qualified immunity

The Court employs a two-step test in reviewing claims for qualified immunity.  First, the Court determines whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiff, show that a constitutional violation has occurred.  *Estate of Carter v. City of Detroit*, 408 F.3d 305,  310-11 (6th Cir. 2005).  Second, the Court considers whether the violation involved a clearly established constitutional right of which a reasonable person would have known.  *Id.*  Throughout the analysis, the burden is on a plaintiff to show that the government officers are not entitled to qualified immunity. *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006) ("Once the qualified immunity defense is raised, the burden is on the plaintiff to demonstrate that the officials are not entitled to qualified immunity.").

In regard to the first step, the Court holds that based upon the applicable law, the facts viewed in the light most favorable to the plaintiff may show that a constitutional violations occurred in regard to excessive force and deliberate indifference, as discussed above.  In the second step, the salient question that a court must ask is whether the state

---

[15]The Court also reflects that the officers had cause to arrest Billy Murray pursuant to the warrant for his arrest.

of the law at the time the alleged action occurred gave a defendant fair warning that his or her alleged treatment of a plaintiff was unconstitutional. *See Hope v. Pelzer*, 536 U.S. 730, 741 (2002). Actual notice to the official is irrelevant. *See Cope v. Heltsley*, 128 F.3d 452, 458 (6th Cir. 1997). Qualified immunity is an objective rather than a subjective inquiry. *Id.* In other words, the relevant inquiry is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. The dispositive question is "whether the defendants had 'fair warning' that their actions were unconstitutional." *Cummings v. City of Akron*, 418 F.3d 676, 687 (6th Cir. 2005) (citations omitted).

When the facts in this case are viewed in the light most favorable to the plaintiff, the Murrays, after surrender, posed no threat to the officers or anyone else. It follows that the use of the unnecessary blows in such circumstances violates a clearly established constitutional right to be free from gratuitous violence during arrest and is obviously inconsistent with a general prohibition on excessive force. Indeed, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted," *Saucier*, 533 U.S. at 202, and if the jury concludes that the officers beat the plaintiffs without an objectively reasonable belief that the plaintiffs posed a threat of serious bodily injury, then it is obvious to us that "no reasonable officer could believe that such [use of force] would not violate another's constitutional rights." *Brandenburg v. Cureton*, 882 F.2d 211, 216 (6th Cir. 1989).

Further, it is well-established that a reasonable officer cannot allow or permit other

officers to excessively beat a person in custody and cannot deny medical treatment to persons in custody. Accordingly, qualified immunity is not extended to Officer Kenneth Mynatt, Officer Godin, and Jason Mynatt with respect to either excessive force or deliberate indifference.

### G. Harriman City Police Chief Jack Stockton

As the plaintiffs have not articulated an claims against Police Chief Stockton in their complaint, defendant Police Chief Stockton will be dismissed from this civil action. If plaintiffs wish to amend their complaint to assert claims with particular allegations against Police Chief Stockton, plaintiffs should file a motion to amend the complaint.

### IV. Conclusion

For the reasons hereinabove set forth, defendants' motion for summary judgment [Doc. 17] is **GRANTED in part and DENIED in part**. Defendants' motion for summary judgment as to improper claims (claims that are self-concocted; not legitimate, recognized causes of action; and duplicative claims) is **GRANTED**; defendants' motion for summary judgment as to excessive force claims is **DENIED**; defendants' motion for summary judgment as to deliberate indifference claims is **DENIED**; defendants' motion for summary judgment as to illegal search and seizure claims is **GRANTED**; defendants' motion for summary judgment as to conspiracy claims is **GRANTED**; defendants' motion for summary

judgment as to false arrest claims is **GRANTED**; and defendants' motion for summary judgment as to claims against Harriman Police Chief Jackson Stockton is **GRANTED**. Parties shall prepare for trial on the remaining claims.

      **IT IS SO ORDERED.**

                  **ENTER:**

                  s/Thomas W. Phillips_____
                  UNITED STATES DISTRICT JUDGE